# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **MELISSA H. TRAIL,** | ) | |
| Plaintiff, | ) | Case No. 1:11CV00058 |
| v. | ) | **OPINION** |
| **LOCAL 2850, UAW/UNITED DEFENSE WORKERS OF AMERICA, ET AL.,** | ) | By: James P. Jones<br>United States District Judge |
| Defendants. | ) | |

*Richard F. Hawkins, III, The Hawkins Law Firm, P.C., Richmond, Virginia, for Plaintiff. Robert E. Paul, Zwerdling, Paul, Kahn & Wolly, P.C., Washington, D.C., for Defendants.*

In this civil case, the plaintiff alleges that her labor union wrongfully retaliated against her in violation of her statutory right to free speech under the Labor Management Reporting and Disclosure Act. The defendants have moved to dismiss on the ground that the plaintiff fails to state a claim upon which relief can be granted. For the following reasons, the motion will be granted.

I

The facts, as set forth in the plaintiff's Complaint, are as follows.

The plaintiff, Melissa H. Trail, was employed by General Dynamics Armament and Technical Products ("General Dynamics") in Marion, Virginia, from

November 1989 until March 2009. Throughout her entire employment and up through the summer of 2010, Trail was a member of defendant Local 2850 of UAW/United Defense Workers of America (the "Union"), the local labor organization that represents the unionized workforce of General Dynamics.[1]

On March 24, 2009, about a year after her active involvement in a strike at the General Dynamics facility in Marion, Trail was criminally indicted for identity theft after allegedly obtaining a list of facility employees with their social security numbers. Two days later, on March 26, 2009, General Dynamics suspended Trail's employment as a result of her criminal indictment. According to a letter notifying Trail of her suspension, the suspension was to remain in effect until the final disposition of the criminal charges. In a related letter sent on March 26, 2009, General Dynamics told the Union that Trail would be returned to work "with back pay for time away from work due to her suspension in the event that she [was] exonerated on all charges related to the release of personal information of [General Dynamics] employees." (Pl.'s Compl. 9.)

---

[1] The two other defendants in this case are UAW Region 8 ("Region 8") and The International Union, United Automobile, Aerospace, and Agricultural Implement Workers ("International"). Region 8 is the representative arm of the UAW that governs and monitors the actions of the numerous UAW-affiliated unions in Virginia and the surrounding states. International is the labor organization with which the Union is affiliated and is the organization to which the Union ultimately reports and submits a portion of its dues.

On August 12, 2009, the case against Trail ended when a *nolle prosequi* order was entered dismissing the charge. Trail contacted General Dynamics and requested that she be returned to her employment; however, the company expressed concern that charges could be re-filed against Trail at a later date. To rebut this concern, Trail convinced Smyth County Assistant Commonwealth Attorney Michael Jones to telephone Todd Green, Director of Human Resources for the Marion facility, and advise him that no charges would be re-filed against Trail.

In the meantime, on August 13, 2009, Trail, who was acting as the Recording Secretary for the Union, walked into the Union office in Marion and found the former Union President and Vice President viewing pornographic images on a union computer. Trail immediately reported the incident to Region 8 representatives, but was told that regional officials did not get involved in local matters. Around one month later, on September 15, 2009, General Dynamics terminated Trail's employment. Trail initially invoked the company's grievance process to challenge her termination, but later withdrew from arbitration due to alleged retaliatory acts by the Union.

The gravamen of Trail's Complaint is that, after she reported the pornography incident to Region 8 representatives, she became the target of harassment and retaliation in violation of her right to free speech under the Labor and Management

Reporting and Disclosure Act ("LMRDA"), 29 U.S.C.A. §§ 401-531 (West 1998 & Supp. 2011). Specifically, Trail claims that the former Union President and Vice President actively obstructed the grievance process with respect to her termination by allowing the process to be needlessly delayed, refusing to allow Trail to attend meetings between General Dynamics and the Union pertaining to her grievance, actively rejecting Trail's attempts to acquire independent legal representation, and holding preparatory meetings with Trail's designated legal representative without her knowledge. Additionally, Trail alleges that the former Union Vice President berated her at an executive board meeting, falsely reported that he was threatened by her husband, and surreptitiously contacted General Dynamics' management before the company made its decision to terminate Trail.

The defendants have moved to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). The motion has been briefed and is ripe for decision.

II

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim. *See Edwards v. City of*

*Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Applying this standard to the plaintiff's Complaint, the defendants' Motion to Dismiss must be granted.

Section 101(a)(2) of the LMRDA provides that "[e]very member of any labor organization shall have the right . . . to express any views, arguments, or opinions; and to express at meetings of the labor organization [her] views . . . upon any business properly before the meeting." 29 U.S.C.A. § 411(a)(2). Trail's alleged violation of Section 101(a)(2) does not involve the issue of whether the Union prevented her from speaking freely, but rather whether it *retaliated* against her for reporting the pornography incident to Region 8 representatives. While Section 101 of the LMRDA sets forth Trail's substantive free speech rights, Section 609 in turn prohibits the Union from retaliating against her, or "fin[ing], suspend[ing], expel[ling], or otherwise discipline[ing] [her] for exercising any right to which [s]he is entitled under the provisions of this section." 29 U.S.C.A. § 529.

Even taking the facts in the light most favorable to Trail, she is unable to state a claim under Section 609 of the LMRDA. At best, the evidence shows that the former Union President and Vice President, as individual union officers, retaliated against Trail for reporting that they had viewed pornographic materials on a union computer. The Supreme Court has held that "ad hoc" retaliation by individual union officers does not give rise to a cause of action under the LMRDA for an

alleged free speech retaliation claim. *See Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 91-92 (1989). Thus, to establish actionable retaliation under Section 609, a union member must show that the retaliation was "the result of an established union disciplinary process." *Maddalone v. Local 17, United Bhd. of Carpenters & Joiners of Am.*, 152 F.3d 178, 185 (2d Cir. 1998). In this case, there is no allegation that the Union itself formally disciplined Trail in retaliation for her exercise of free speech rights.

Trail argues that *Breininger* does not eliminate her retaliation claim because she contends that her claim does not arise under Section 609. She purports to bring a free-standing retaliation claim arising directly under Section 101, invoking the remedies available under Section 102 of the LMRDA.[2] While some courts have recognized a retaliation claim arising directly under Section 101 and then brought pursuant to Section 102, distinct from a retaliatory *discipline* claim arising under Section 609, *see, e.g., Maddalone*, 152 F.3d at 183, the Fourth Circuit has not addressed whether such a claim exists. Upon careful consideration of the arguments of counsel, I decline to recognize such a claim.

---

[2] Section 102 of the LMRDA states that "[a]ny person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief . . . as may be appropriate." 29 U.S.C.A. § 412.

- 6 -

First, I disagree with Trail's view of how Sections 101, 102, and 609 interact with each other. Sections 102 and 609 do not provide alternative remedies for violations of Section 101. Instead, Sections 101 and 609 both create substantive rights that benefit union members — Section 101 grants union members a number of rights including free speech, and Section 609 adds the right not to be subject to retaliatory discipline for exercising any LMRDA right. Section 102 contains the remedy provisions for alleged violations of both of these other sections. *See* 29 U.S.C.A. § 529 ("The provisions of section 412 [Section 102] of this title shall be applicable in the enforcement of this section [Section 609].").

Second, even assuming the arguable existence of a free-standing retaliation claim, Trail is unable to state a claim for relief under the LMRDA. In order to prevail on a free-standing retaliation claim under Section 102, the plaintiff must first prove that the conduct at issue was an exercise of free speech as defined and protected by the LMRDA. *See Black v. Ryder/P.I.E. Nationwide, Inc.*, 970 F.2d 1461, 1469 (6th Cir. 1992). The hallmark of the LMRDA is "to promote union democracy," or to protect union members' rights to freely express their *opinions* about union matters. *United Steelworkers of Am., AFL-CIO-CLC v. Sadlowski*, 457 U.S. 102, 112 (1982). Thus, the speech protected under the LMRDA "is limited to speech that relates to the general interests of the union membership at large," not

speech that is of an entirely personal interest. *Hylla v. Transp. Commc'ns Int'l Union*, 536 F.3d 911, 917 (8th Cir. 2008). This "includes criticism of union leadership, questions as to the wisdom of proposed union measures, and discussion of general union affairs with other members." *Casumpang v. Int'l Longshore, & Warehouse Union, Local 142*, 297 F. Supp. 2d 1238, 1250 (D. Haw. 2003) (internal citations omitted).

Trail's report to Region 8 representatives that two local union officers viewed pornography on a single occasion is not the type of speech protected by Section 101(a)(2) of the LMRDA. While Trail did, in some respects, criticize union leadership, her complaint is not the type of "view[], argument[], or opinion[]" in need of protection in order to promote union democracy. *See* 29 U.S.C.A. § 411(a)(2) (West 1998 & Supp. 2011). Trail does not allege that she made statements at a union membership meeting or raised issues with respect to union policies. Moreover, her complaint did not concern the "wisdom of proposed union measures" or a "discussion of general union affairs with other members." *Casumpang*, 297 F. Supp. 2d at 1250.

III

Accordingly, the defendants' Motion to Dismiss must be granted and the plaintiff's Complaint will be dismissed.

A separate order will be entered forthwith.

                                              DATED:    March 27, 2012

                                              /s/   James P. Jones
                                              United States District Judge